IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER D. SPENCE, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 23-864-GBW |
| | : | |
| BRIAN EMIG, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

---

Christopher D. Spence. *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

## MEMORANDUM OPINION

November 18, 2024
Wilmington, Delaware

Williams, District Judge:

Petitioner Christopher D. Spence is an inmate at the James T. Vaughn

Correctional Center in Smyrna, Delaware.  Presently pending before the Court is

Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and

an Amended Petition.  (D.I. 1; D.I. 7)  The State filed a Motion for Leave to File a

Motion to Dismiss and a Motion to Dismiss the Petition as Time Barred.  (D.I. 10;

D.I. 10-1)  Petitioner filed two Responses.  (D.I. 11; D.I. 13)  After reviewing the

State's Motions and Petitioner's Responses, the Court granted the State's Motion

for Leave to File a Motion to Dismiss.  (D.I. 18)  For the reasons discussed, the

Court will grant the State's Motion to Dismiss the Petition as Time-Barred, and

dismiss the Petition as barred by the limitations period prescribed in 28 U.S.C. §

2244.

## I.    BACKGROUND

> On the evening of July 7, 2012, Orain and Joshien Harriott
> hosted a graduation and birthday party on an upper floor
> of a building at 1232 North King Street, Wilmington,
> Delaware, that was open to the public with payment of a
> cover charge. Guests were checked with a wand for
> weapons and their bags were searched. Many in
> attendance were affiliated with a gang known as the
> "Gaza." The Gaza are centered around the Harriott family
> and are named for an auto repair shop, at which the
> members hang out, which itself is named for a type of
> Jamaican music. Many of the Gaza members are Jamaican
> immigrants. The leader of the Gaza is Orain Harriott, and
> members include Orain's brother, Joshien Harriott, Orain's

wife, Amy Harriott, their son, Derrick Grant-Higgin, Ryan McKay, Ugochukwu Henry and [Petitioner].

The rival gang to the Gaza are the "Sure Shots." The Sure Shots are centered around the Phillips family. The leader of the Sure Shots is Seon Phillips, and members include his brothers, Roland Phillips and Otis Phillips, Jeffrey Phillips (no relation), and Kelmar Allen. Kirt Williams was associated with the Sure Shots but was not a member. Many of the Sure Shots members are Jamaican immigrants.

Sometime after midnight of July 8, 2012, six or seven members of the Sure Shots, including Kelmar Allen, Kirt Williams, Jeffrey Phillips, Roland Phillips, and Seon Phillips, arrived at the party. Shortly after their arrival, there was a disagreement between Jeffrey Phillips and Orain Harriott, with Jeffrey Phillips "disrespecting" Orain Harriott in Jamaican slang. Kelmar Allen and others took Jeffrey Phillips outside, where Kelmar Allen saw Ryan McKay and another man walking up the street towards the building with a shotgun and a handgun, respectively. Kelmar Allen and Kirt Williams reentered the party to warn and gather the Sure Shots still inside. Kelmar Allen brushed past Orain Harriott, who was telling him to leave. Kelmar Allen told the others about the guns, and walked towards the elevator with Kirt Williams to leave. There, they got into a brief altercation with Joshien Harriott. As they waited for the elevator, [Petitioner] shot at them three times with the shotgun that Ryan McKay had brought to the party. Kirt Williams was killed and one shot grazed Kelmar Allen. Kelmar Allen blacked out and woke up in the elevator. When it reached the first floor, Kelmar Allen fled, leaving Kirt Williams dead inside. Outside, Jeffrey Phillips was shooting at someone in the street. [Petitioner] testified at trial that he shot at Kirt Williams and Kelmar Allen in self-defense. Although he had seen neither at the party with a gun, he thought he saw them reach for their waistbands.

2

> Officers responded to a call from the scene, and upon searching the area discovered three .40 caliber spent bullet casings on the intersection of 13th and King Streets. They found the body of the deceased, Kirt Williams in the elevator and, in the area where the party had been taking place, found a shotgun blast, blood splatter patterns, and three shotgun shells.

*State v. Spence*, 2019 WL 3976055, at *2–3 (Del. Super. Ct. Aug. 20, 2019).

In January 2013, a New Castle County grand jury indicted Petitioner on first degree murder, attempted first degree murder, first degree reckless endangering, three counts of possession of a firearm during the commission of a felony ("PFDCF"), drug dealing, and possession of drug paraphernalia. *See id.* On December 19, 2013, a Superior Court jury convicted Petitioner of first degree murder, attempted first degree murder, first degree reckless endangering, and the three related firearms charges. *See id.* On May 16, 2014, the Superior Court sentenced Petitioner to life imprisonment plus 24 years, followed by decreasing levels of supervision. (D.I. 10-4) Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment on November 13, 2015. *See Spence v. State*, 129 A.3d 212, 216 (Del. 2015).

On January 11, 2016, Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") (D.I. 15-27), and the Superior Court appointed counsel to represent Petitioner in

3

his Rule 61 proceeding. (D.I. 10-2 at Entry Nos. 77, 79) On September 18, 2017,

post-conviction counsel filed an amended Rule 61 motion. (D.I. 10-2 at Entry No.

98; D.I. 15-28) On August 20, 2019, after conducting an evidentiary hearing (D.I.

62), the Superior Court denied Petitioner's Rule 61 motion. *See Spence*, 2019 WL

3976055, at *7, 10-12 (Del. Super. Ct. Aug. 20, 2019). Petitioner appealed, and

the Delaware Supreme Court affirmed the Superior Court's judgment on April 9,

2020. *See Spence v. State*, 227A.3d 1096 (Table), 2020 WL 1815763, at *1 (Del.

Apr. 9, 2020).

On September 12, 2022, Petitioner filed a motion to modify his sentence,

which the Superior Court denied on September 26, 2022. (D.I. 10-2 at Entry Nos.

133, 134) Petitioner did not appeal from that judgment.

In August 2023, Petitioner filed the instant Petition, which he later amended

("Petition"). (D.I. 1; D.I. 7) The Petition asserts the following six Claims for

relief: (1) the State improperly published inflammatory material to the jury  at

Petitioner's trial in the form of a PowerPoint presentation (D.I. 1 at 5); (2) during

the trial, the State improperly expressed its belief that Petitioner was lying about

the events leading up to his arrest (*Id*. at 7); (3) the State improperly argued that the

victims were not part of the Sure Shots gang when the State's "chief" witness was

charged with gang participation, despite the State prosecuting members of the

same gang (*Id*. at 8); (4) the State improperly argued to the jury about the

availability of self-defense (*Id.* at 10); (5) trial counsel provided ineffective assistance by not suppressing Petitioner's statement to the police (D.I. 7 at 5); and (6) trial counsel provided ineffective assistance by not filing a motion for a new trial based on Allen's untruthful testimony (*Id.* at 5).  In February 2024, the State simultaneously filed in this Court a Motion for Leave to File a Motion to Dismiss (D.I. 10) and a Motion to Dismiss the Petition as Time Barred (D.I. 10-1). Petitioner filed two Responses in March 2024.[1]  The Court granted the State's Motion for Leave to File a Motion to Dismiss in August 2024.  (D.I. 18)

## II.    ONE YEAR STATUTE OF LIMITATIONS

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

---

[1]In his Amended Response, Petitioner asserts he could not timely file the instant Petition because the prison and courts "shut down" during Covid-19.  (D.I. 13 at 3) Petitioner provides the same explanation in his Petition.  (D.I. 1 at 13) ) The Court views Petitioner's Covid-19 argument as an attempt to trigger equitable tolling, and addresses the contention in the body of the Memorandum Opinion. *See infra* at Section II.B.

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021) (actual innocence exception).

Petitioner does not assert, and the Court does not discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D) for Claims One through Five. Given these circumstances, the one-year period of limitations for Claims One through Five began to run when Petitioner's convictions became final under § 2244(d)(1)(A).

6

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed Petitioner's convictions on November 13, 2015, and he did not seek review by the United States Supreme Court. As a result, his judgment of conviction became final on February 11, 2016. Applying the one-year limitations period to that date, Petitioner had until February 10, 2017 to timely file a habeas petition as for Claims One through Five. *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the triggering date).

As for Claim Six, it appears that Petitioner did not become aware of the factual predicate of this Claim until appointed post-conviction counsel filed the amended Rule 61 motion raising the issue of Allen's changed testimony.[2]

---

[2]Petitioner did not raise Claim Six in his original *pro se* Rule Six motion. Additionally, the Rule 61 affidavit that trial counsel provided in response to the

7

Given these circumstances, pursuant to § 2244(d)(1)(D), the Court views the filing date of the amended Rule 61 motion – September 18, 2017 – as the starting date for the limitations period for Claim Six.  Applying one year to that date, Petitioner had until September 18, 2018 to timely file Claim Six.

Petitioner, however, did not file the instant Petition until August 8, 2023, more than six years after the February 10, 2017 deadline for Claims One through Five and more than five years after the September 18, 2018 deadline for Claim Six. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner makes a gateway showing of actual innocence.  *See Jones,* 195 F.3d at 158; *Wallace,* 2 F.4[th] at 151 (explaining that actual innocence is an "exception to the statute of limitations" rather than an "extension to the statute of limitations via equitable tolling.").  The Court will discuss each doctrine in turn.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed

---

amended Rule 61 motion avers that trial counsel was not aware that Allen changed his testimony about the owner of the gun in a trial involving members of the Sure Shots gang that occurred after Petitioner's trial.  (D.I. 10-5; D.I. 10-6 at 2)

and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *See id.* at 424. The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

In this case, Petitioner filed his Rule 61 motion on January 11, 2016, before AEDPA's limitations period even started to run for any of his six Claims. (D.I. 10-2 at Entry No. 77) The Rule 61 motion tolled the limitations period from January 11, 2016 through April 9, 2020, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the Rule 61 motion. AEDPA's limitations clock started to run on April 10, 2020, and ran the entire one-year without interruption until the limitations period expired on April 12, 2021.[3] The motion for sentence modification that Petitioner filed on September 12, 2022 does not trigger

---

[3]The last day of the limitations period fell on a weekend. Therefore, the filing deadline extended through to the next business day. *See* Fed. R. Civ. P. 6(a)(1)(C).

statutory tolling because it was filed after the expiration of AEDPA's limitations period.

Thus, even after applying the available statutory tolling, the Petition is time-barred, unless equitable tolling applies or Petitioner establishes a gateway claim of actual innocence.

### B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* at 651-52. Additionally, the obligation to act diligently "does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period [the petitioner] is exhausting state court remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will only warrant equitable tolling if there is "a causal

connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013). The Third Circuit has explained that extraordinary circumstances for equitable tolling purposes may be found where: (1) the defendant actively misled the plaintiff; (2) the plaintiff was in some extraordinary way prevented from asserting his rights; or (3) the plaintiff timely asserted his rights mistakenly in the wrong forum. *See Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001).

Petitioner contends that his delay in filing the instant Petition was due to the Covid-19 pandemic. He explains that he started drafting his habeas petition after his conviction became final and then, the Covid-19 "pandemic hit and the courts and prison shut down so [he] couldn't get to the law library," which "prevented [him] from finishing and mail[ing] it out." (D.I. 1 at 14; D.I. 13 at 3) Giving Petitioner the benefit of the doubt, the Court presumes Petitioner meant to say he started drafting his § 2254 petition after the Delaware Supreme Court affirmed the denial of his Rule 61 motion (April 9, 2020), rather than after the date on which his conviction became final (February 11, 2016). Nevertheless, even if the later date is used, Petitioner's Covid-19 argument does not trigger equitable tolling. Petitioner has not provided any evidence of the prison, courts, or the law library "shutting

11

down" during the Covid-19 pandemic.  Nor has Petitioner explained how long this alleged "shut down" lasted.  Notably, "this Court remained open to receive filings in habeas cases through the pandemic,"[4] and other prisoners from the same institution filed habeas petitions during the relevant period (April 10, 2020 through August 8, 2023).  Finally, the record reveals that Petitioner filed a motion for sentence modification in the Delaware Superior Court on September 26, 2022, (10-2 at Entry 133), demonstrating that the alleged "shut down" did not continue through the date he filed the instant Petition.  In sum, Petitioner has failed to demonstrate a causal connection between any restrictions caused by Covid-19 and his ability to file his Petition by April 21, 2021.

Petitioner also contends that the limitations period should be equitably tolled because "he didn't know what he was doing."  (D.I. 1 at 14)  This argument is unavailing, because factors such as a petitioner's ignorance of the law or miscalculation of the one-year filing period do not warrant equitable tolling.  *See Martin v. Adm'r New Jersey State Prison,* 23 F.4th 261, 273 (3d Cir. 2022) ("a lack of legal knowledge or legal training does not alone justify equitable tolling"); *Lewis v. Phelps*, 672 F. Supp. 2d 669, 674 (D. Del. 2009).

---

[4]*Land v. May*, 2023 WL 5135940, at *4 (D. Del. Aug. 10, 2023) (finding that pandemic and alleged inability to access legal resources in prison did not equitable toll deadline).

Thus, the Court concludes that that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented.

### C. Actual Innocence

Finally, a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins*, 569 U.S 383, 392 (2013); *Wallace*, 2 F. 4th at 150-151. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A petitioner satisfies the actual innocence exception by (1) presenting new, reliable evidence of his innocence; and (2) showing "by a preponderance of the evidence" that "a reasonable juror would have reasonable doubt about his guilt[] in light of the new evidence." *Wallace*, 2 F.4th at 151. In this case, the actual innocence exception is inapplicable because Petitioner does not allege that he is actually innocent.

For all of these reasons, the Court concludes that the Petition is time-barred. Accordingly, the Court will grant the State's Motion to Dismiss.

## III.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition is time-barred and does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## IV.    CONCLUSION

For the reasons discussed, the Court will grant the State's Motion to Dismiss and dismiss the Petition as time-barred without holding an evidentiary hearing or issuing a certificate of appealability. The Court will enter an order consistent with this Memorandum Opinion.